UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____

THE MEDICINES COMPANY,                )
                                      )
            Plaintiff,                )  Docket No. 1:10-cv-286
                                      )  Alexandria, Virginia
            v.                        )
                                      )  September 10, 2010
DAVID KAPPOS, *et al.*                )  11:11 a.m.
                                      )
            Defendants.               )
_____

TRANSCRIPT OF HEARING

BEFORE THE HONORABLE CLAUDE M. HILTON

UNITED STATES DISTRICT JUDGE

APPEARANCES:

  For the Plaintiff:       Peter D. Keisler, Esq.
                           C. Frederick Beckner, III, Esq.

  For the Defendants:      Dennis C. Barghaan, Jr., Esq.
                           Monika L. Moore, Esq.
                           John P. Corrado, Esq.

  Court Reporter:          Tracy L. Westfall, RPR, CMRS, CCR

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  Civil Action 2010-286, The Medicines
 3   Company v. David Kappos, et al.
 4          MR. CORRADO:  Good morning, Your Honor.  Jack Corrado
 5   for the movant.
 6          MR. KEISLER:  Good morning, Your Honor.  Peter Keisler
 7   for The Medicines Company.
 8          MR. BARGHAAN:  Good morning, Your Honor.  Dennis
 9   Barghaan on behalf of the defendants.  With me, as always in
10   this case, is Monika Moore from my office.
11          MR. CORRADO:  Your Honor, as I'm sure the Court
12   appreciates, no lawyer relishes the prospect of coming before
13   the Court asking for relief to intervene just so he can appeal
14   the ruling of the Court.  But I think as the Court will also
15   appreciate, the real harm to my client, APP Pharmaceuticals, the
16   real harm is a consequence of the ruling.
17          There's been a lot of suggestion in the briefs of MDCO,
18   and I think all of the cases cited by the government's brief
19   talk about a different situation, a situation in which parties
20   are trying to intervene into an ex parte proceeding, a PTE
21   extension.  That's not the situation here.
22          The harm is not a consequence of what any agency did in
23   this case.  The harm to my client is the fact that, as a
24   practical matter, practical effect of this Court's ruling, a
25   patent, the '404 patent, that should have expired has not
```

1    expired.  So all of the effort that my client has put into its

2    abbreviated new drug application, all of the efforts in

3    development and marketing, with the expectation that as soon as

4    the FDA issues its approval, my client can begin to enter the

5    market immediately with a competitive drug to Angiomax, all of

6    that has been suspended, and the time when my client can compete

7    without the specter of this patent has been extended to a period

8    that is uncertain.

9         THE COURT:  That's not exactly true though, is it,

10   because your client would have to get FDA approval and would

11   have quite a process before they could go into the market in any

12   event?

13        MR. CORRADO:  That's correct.

14        THE COURT:  Might not get FDA approval so it may be

15   somewhat speculative as to whether they'd be damaged at all or

16   not.

17        MR. CORRADO:  I would submit, Your Honor, that the harm

18   is not speculative.  Even if the harm were speculative -- even

19   if the harm were contingent, and the *Teague* case, which we've

20   cited in our brief, *Teague v. Bakker* is the case that's

21   controlling.  The issue really is intervention.  The issue isn't

22   standing.  The issue is intervention.

23        With respect to intervention, the issue is whether

24   there's a significant protectable interest.  *Teague* said that

25   interest can be contingent.  In *Teague,* the issue was whether or

1  not a judgment would later result which might create some

2  rights.  The harm to APP Pharmaceuticals is, we think, not

3  contingent.  There is a patent, the '404 patent, with its

4  penumbra of restrictions and encumbrances, whatever they may be,

5  whatever they may be, that stand in the way of my clients doing

6  what it would otherwise be entitled to do.

7         If this patent had expired, which we believe it did and

8  should have, if it expired, all of those encumbrances, all of

9  those restrictions, all of those bars to market entry would have

10  been gone, should now be done, but they're not.

11         The fact that they're not creates an injury to my

12  client.  That's an injury that we have an interest in

13  protecting.  Clearly, I think, under *Teague*, and especially

14  given the contingent, the fact that *Teague* said you can have a

15  contingent interest in the outcome, that is a significantly

16  protectable interest.  That interest is sufficient, especially

17  now that the government has indicated that it will not appeal,

18  an interest that meets all of the requirements for intervention.

19         Your Honor, there's been a lot said about standing.  I

20  think standing is an issue that should arise at the right time

21  or the right place, and that's the Federal Circuit Court of

22  Appeals.  The issue isn't standing in general.  It isn't

23  standing in this case.  It's standing on appeal.  Whether there

24  is standing on appeal should be addressed at the Federal Circuit

25  in the context of the appeal.  It's not a fourth element to

1    intervention.

2            Even if it were, even if it were, the standing

3    elements, both Article III and permissive -- and prudential

4    standing are met by the fact that a patent, which should not

5    have stood in the way of my client's development, marketing, and

6    investment, is now in the way.  As a consequence of that, there

7    is a real injury, and the injury is sufficient -- should be

8    sufficient to award our client leave to intervene in this case.

9            THE COURT:  Okay.

10           MR. KEISLER:  Good morning, Your Honor, and may it

11   please the Court.

12           APP says that this is not about it trying to inject

13   itself into our patent extension process and the issue is not

14   standing but intervention, but obviously they are trying to

15   inject themselves into this APA case.  The issue is, of course,

16   standing because intervention requires them to show a

17   significantly protectable interest.  If they don't have

18   standing, they don't have a legally protectable interest.

19           This is an APA case in which the government announced

20   yesterday that it's chosen to accept the Court's decision and

21   not appeal it, and APP is trying to step into the government's

22   shoes and appeal in the government's place to defend an agency

23   action that the agency has determined that it's no longer going

24   to pursue.

25           The judicial precedents are completely clear that the

1    patent laws don't permit intervention of the sort, and it's

2    telling that in our brief and the government's brief, we cited

3    extensively to patent cases involving the PTO and construing the

4    patent laws.  APP, in its two briefs, could not cite a single

5    patent case in support of its position.  They don't even mention

6    *Boeing v. PTO*, which is the Federal Circuit decision that's

7    completely on point here.  Exactly the same situation where the

8    intervenor liked the agency decision, didn't like the district

9    court decision and wanted to go to the Court of Appeals, and the

10   Federal Circuit said it had no standing and it could not proceed

11   with the appeal.

12        APP says that the Federal Circuit on this appeal

13   wouldn't apply its own law to that question, but that's clearly

14   wrong.  The Federal Circuit has said it applies its own law when

15   the issue is standing and its own jurisdiction.  That's the

16   *Biotechnology Industrial Organization* case.  It says it applies

17   its own law when the issue is what the patent laws require

18   because, of course, no other circuit issues such a decision.  It

19   said that in *Minks v. Polaris*.

20        These cases, which APP is literally silent on, does not

21   even mention, these cases establish that Congress has set forth

22   a specific statutory scheme that precludes intervention.  The

23   Supreme Court has said that if you want to carry a case forward

24   when the principal party on your side has dropped out, you have

25   to show that you have standing on your own, that Congress meant

1   for you independently in order to be able to maintain such an

2   action.  Here they can't show that because Congress has done the

3   opposite.  It has very severely circumscribed the rights of

4   third-party competitors in PTO cases.

5        They said if you want to try to bring these kinds of

6   claims, you have to do it in separate litigation, private party

7   versus private party, not in agency proceedings, not in judicial

8   review of agency proceedings under the APA.  That's why, when we

9   were before the PTO in the administrative proceedings on our

10  patent term extension application, APP couldn't and didn't

11  participate.  That was purely *ex parte*, even though they could

12  have said exactly what Mr. Corrado said here, we want to enter

13  the market and a longer patent will keep us from doing so for a

14  longer period of time.

15       That's why if the PTO had decided in our favor in the

16  first instance, rather than against us, APP could not have filed

17  an APA challenge in this district court to challenge that even

18  though, again, they could have made the same assertions about

19  their interests.  That's why they can't circumvent those

20  restrictions by anointing themselves the sole appellant here.

21       If they could, then every time a district court ruled

22  against the PTO, it would suddenly be open season.  All of the

23  competitors out there who couldn't participate at the agency

24  level, who couldn't bring a case in district court, suddenly

25  they can appear and all come in at the appellate stage.  That's

1    nonsense.  It's not the law.  If it were the law, if it were the

2    law, surely with all of the patent cases out there and all of

3    the competitors with intense economic interests hovering around

4    those cases, if that was the law, surely APP would have been

5    able to find and cite at least one case where that has actually

6    happened.

7            Now, none of this is to suggest that they don't have

8    any rights.  They do have some rights, but Congress has

9    established a very specific mechanism for the attempt to assert

10   those rights with very specific procedures that APP is here

11   trying to circumvent.  What the Federal Circuit said in the

12   *Syntex* case when it affirmed, actually, a decision by Your Honor

13   unanimously, it said the competitor's remedy, if any, must await

14   confrontation with the patent owner in separate infringement

15   litigation.

16           Congress, in Hatch-Waxman, established very specific

17   procedures for such litigation and it's very carefully

18   structured.  It specifically and explicitly in the statute says

19   a competitor in that separate litigation can raise the claimed

20   invalidity of a patent term extension if it can show there was a

21   material failure to comply with the statutory requirements by

22   either the PTO or by the patentholder.

23           APP doesn't like those procedures.  Congress

24   established a very careful set of procedures that balances the

25   rights in those litigations between the patentholders and the

competitors, and APP says in its papers it would be injury for

it to be forced to comply with those procedures.  It's not

injury to be forced to comply with congressionally-mandated

procedures.  It would flout Congress' will for APP to be able to

ignore those procedures, short circuit that process, and then

come here by the simple expedient of intervening in this APA

action.

        There is, in fact, pending litigation under

Hatch-Waxman between APP and The Medicines Company.  If they

think they have a claim that there's a material failure to

comply with the extension provisions, they can raise that there,

we will contest it, and that's where Congress said that the

fight ought to take place.

        THE COURT:  I understand your position.

        Did you want -- 30 more seconds.

        MR. CORRADO:  Your Honor, very briefly.

        It's a different situation.  All of the situations

they're talking about are situations in which there is an

attempt by somebody to get into the patent term extension

process.  This is not that situation.

        This is a situation in which the Court has ruled, very

familiar with your ruling obviously, has made a ruling and that

ruling has by practical effect extended the patent that

otherwise expired.  That's different.  That's different from the

case -- any of the cases they've cited.

1    They talk about *Boeing*.  Again, *Boeing* is a standing

2  case.  We don't believe that you get to standing.  The issue is

3  intervention.  In *Boeing*, the Court said that the only alleged

4  injury was that the plaintiff said that it may seek to practice

5  the technology.  It did not allege that Boeing threatened to sue

6  it for infringement or that Boeing's conduct created a

7  reasonable apprehension of such suit.

8    That isn't the case here.  There is a reasonable

9  apprehension of infringement litigation.  There is a reasonable

10  apprehension of being blocked entry into the market by this

11  patent.  It's that threat, that injury, which would have given

12  standing in *Boeing*, that gives us standing in this case and

13  certainly, I think, is sufficient to meet the requirement of a

14  protectable, significant protectable interest.  Thank you.

15    THE COURT:  All right.  Well, I don't know about this

16  standing issue.  I'm inclined to think you don't have standing,

17  but I'm not prepared to say that at the moment.  I might look at

18  this a little further and give you-all something in writing.

19    I'm going to deny your motion to intervene here.  I

20  don't find this intervention to be a timely one.  This case has

21  been going on a long time.  If you-all thought you had an

22  interest to protect in it, you knew it from the start and you

23  had plenty of time to come in and to make this motion to

24  intervene and to protect your interest if you thought they

25  weren't being adequately protected.

1              I believe your interests were adequately protected

2    during the trial of this case and just didn't go quite the way

3    you would have liked it to have gone.  To allow intervention at

4    this point would be a great prejudice to the plaintiff in this

5    case and would far outweigh any prejudice to the proposed

6    intervenor here.

7              Your motion to intervene is denied.  I may well go on

8    and look at this standing issue.  If I do, why, you'll get

9    something from me on that.

10             Thank you.  That takes care of our civil cases, does it

11   not?

12             All right.  We'll adjourn until Monday morning at 9:30.

13        * * *

14        (Proceedings concluded at 11:25 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2

3           I certify, this 13th day of September 2010, that the

4    foregoing is a correct transcript from the record of proceedings

5    in the above-entitled matter to the best of my ability.

6

7                              /s/
                    _____
8                    Tracy Westfall, RPR, CMRS, CCR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25